**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY BARTONE,** | : | **Civil No. 1:15-CV-2142** |
| | : | |
| **Petitioner** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **MICHAEL OVERMEYER,** | : | |
| | : | |
| **Respondent** | : | |

## REPORT AND RECOMMENDATION

### I.   Factual Background and Procedural History

In 2008, Gary Bartone was convicted at trial of multiple offenses involving the cruel, serial sexual exploitation of his own adopted daughters, a crime that he confessed to committing. The background of Bartone's sexual abuse of these children was aptly described by the Pennsylvania Superior Court when it affirmed the denial of post-conviction relief for this child molester, explaining that:

> On May 4, 2006, Gary B. 's adopted daughter, H.B., reported to the Pennsylvania State Police that Gary B. had sexually abused both her and her sister, J.B., over a period of several years. At the time of these alleged incidents, Gary B. served as a foster parent for Luzerne County and shared a residence with his wife and five children. H.B. stated that, on numerous occasions while she was between the ages of twelve and fourteen, Gary B. fondled her breasts and her vagina. These incidents occurred in the living room of the family's residence and in the bedroom that H.B. shared with her two sisters. Notes of Testimony ("N.T."),

*11/10/2008,* at 183.  Gary B. also engaged in oral sex with H.B. in the living room of the residence.

Similar acts also took place outside of Gary B. 's home.  On multiple occasions while H.B. was between the ages of fifteen and seventeen, Gary B. took H.B. on fishing trips to a private pond in Columbia County, Pennsylvania.  There H.B. would consume alcoholic beverages that Gary B. had purchased for her.  On these trips, Gary B. touched H.B.'s breasts and vagina.

In April 2006, Gary B. traveled to Monroe County with H.B. and J.B. There, the three stayed at Gary B. 's biological daughter's home while she attended a wedding in New Jersey.  H.B. and J.B. consumed alcoholic beverages that Gary B. had purchased for the girls earlier that day.  Gary B. instructed H.B. and J.B. to undress, at which point he proceeded to touch their genitals and their breasts.

On May 4, 2006, H.B. disclosed these instances of abuse to the mother of a fellow classmate, Angelique Stone ("Stone").  On that same day, Stone transported H.B. to the state police barracks in Luzerne County. On May 5, 2006, Pennsylvania State Police trooper Christopher King questioned Gary B. about these allegations.  During the interview, Trooper King stated that he knew that Gary B. had "touched his daughters." N.T. at 349.  Gary B. nodded in the affirmative and, in a low tone, responded "yeah." Id.

On March 27, 2007, Trooper King filed a criminal complaint, charging Gary B. with four counts of involuntary deviate sexual intercourse, four counts of aggravated indecent assault, two counts of endangering the welfare of children, four counts of corruption of the morals of a minor, two counts of furnishing alcohol to minors, five counts of indecent assault, one count of incest,  one count of rape, and two counts of sexual assault.

On November 17, 2008, a jury acquitted Gary B. on the charges of rape, incest, and on one of the sexual assault counts.  The jury found Gary B. guilty on all other counts.  On March 30, 2009, the trial court sentenced

Gary B. to an aggregate term of eighteen to thirty-six years imprisonment.  The trial court also found Gary B. to be a sexually violent predator pursuant to 42 Pa. C.S. §§ 9798 (effective *1/24/2005-2/20/2012).*

On April 9, 2009, Gary B. filed a timely post-sentence motion to modify his sentence.  The trial court denied that motion on May 4, 2009.  On September 27, 2011, on direct appeal, this Court affirmed Gary B. 's judgment of sentence. *Commonwealth v. [Gary B.],* 942 MDA 2009, slip op. at 8 (Pa. Super. Sept. 27, 2011) (en banc).[1]  On March 7, 2012, the Pennsylvania Supreme Court denied Gary B. 's petition for allowance of appeal.  *Commonwealth v. [Gary B.]*, 40 A.3d 119 (Pa. 2012) (per curiam).

On July 12, 2012, Gary B. timely filed [a] PCRA petition . Therein, Gary B. alleged ineffective assistance of counsel ("lAC").  Specifically, Gary B. asserted that his trial attorneys, Joseph Yeager ("Attorney Yeager") and Vincent Cappellini ("Attorney Cappellini"), failed to call Gary B. 's close friend, Dawn Oliver ("Oliver"), as a witness at trial.  According to Gary B., Oliver's testimony would have demonstrated that H.B. fabricated the allegations of sexual abuse against Gary B.  Gary B. further contends that Oliver's proffered testimony would have demonstrated that members of the prosecution threatened Oliver in an effort to prevent her from testifying at Gary B.'s trial.  On January 3, 2013, the PCRA court held an evidentiary hearing.  At the PCRA hearing, Gary B. testified that he had informed Attorneys Cappellini and Yeager that Oliver was a potential trial witness. Oliver similarly testified that she was willing to testify at Gary B. 's trial, but that neither Attorney Cappellini nor Yeager ever contacted her.  Oliver further alleged that

---

[1]In this direct appeal, Bartone objected to the trial court's failure to allow him to introduce speculative and temporally remote evidence relating to sexual activity by the victims at trial, as well as arguing that the Commonwealth's proof that one of his victims was a minor at the time of the events charged against him was legally insufficient.  The Superior Court rejected these claims, and Bartone does not reprise this discredited allegations in this habeas corpus petition.  (Doc. 15, pp.190-201.)

Jennifer Roberts, an assistant district attorney for Luzerne County, intimidated her in order to prevent her from testifying at Gary B.'s trial. Specifically, Oliver indicated that, in 2005, Roberts threatened that Oliver would "lose [her] children for good" if she testified for the defense. N.T.P. at 77. Contrary to Oliver's narrative, Attorney Yeager testified at the evidentiary hearing that either he or Attorney Cappelini investigated all potential witnesses that Gary B. provided to them. Attorney Yeager also stated that Gary B. had never informed his that an assistant district attorney had threatened a potential defense witness. On June 3, 2013, the PCRA court denied Gary B.'s PCRA petition. On June 28, 2013, Gary B. filed a notice of appeal.

(Doc. 15, pp.292-295, *Commonwealth v. Gary B.,* 1187 MDA 2013, Pa. Super. Ct. *6/18/14,* p. 1-5.)

In his state post conviction appeal, Bartone presented a single issue, arguing that his trial counsel were ineffective in failing to call Dawn Oliver as a witness at his state trial. Bartone does not pursue this claim in the instant federal habeas corpus petition. The Pennsylvania Superior Court rejected this claim of ineffective assistance of counsel, and Bartone then sought review in the Pennsylvania Supreme Court which denied his Petition for Allowance of Appeal on December 2, 2014.

This federal habeas corpus petition then ensued. (Doc. 1.) In his *pro se* petition, Bartone advances four legal claims in a cryptic fashion, none of which appear to have been properly presented to the state courts for their consideration. Specifically, Bartone alleges that: (1) he was denied effective assistance of counsel when his counsel "failed to obtain previous confession of said victim;" (2) he was

"denied expert testimony, new rule of Constitutional law;" (3) he received an illegal excessive sentence; and (4) that he was entitled to habeas relief because of "prosecutorial misconduct illegal sentence, new rule of constitutional law." (Doc. 1, p.9.) These federal habeas corpus claims advanced by Bartone share three common elements. First, they are all presented in a skeletal fashion. Second, they are largely unintelligible. Third, none of these claims were properly presented, preserved and exhausted before the state courts.

It is against this backdrop that we now consider Bartone's habeas corpus petition. For the reasons set forth below, it is recommended that this petition be denied.

## II.     <u>Discussion</u>

### A.     <u>State Prisoner Habeas Relief–The Legal Standard</u>

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

**(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

**(A)** the applicant has exhausted the remedies available in the courts of the State;
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

## 1.    Substantive Standards For Habeas Petitions

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief.  At the outset, a petition must satisfy exacting substantive standards to warrant relief.  Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts.  Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent

with rudimentary demands of fair procedure.  *See, e.g., Reed v. Farley*, 512 U.S. 339, 354 (1994).  Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension.  *See Priester v. Vaughan*, 382 F.3d 394, 401-02 (3d Cir. 2004).

## 2.     Deference Owed to State Court Rulings

These same principles which inform the standard of review in habeas petitions and limit habeas relief to errors of a constitutional dimension also call upon federal courts to give an appropriate degree of deference to the factual findings and legal rulings made by the state courts in the course of state criminal proceedings.  There are two critical components to this deference mandated by 28 U.S.C. § 2254.

First, with respect to legal rulings by state courts, under §2254(d), habeas relief is not available to a petitioner for any claim that has been adjudicated on its merits in the state courts unless it can be shown that the decision was either:  (1) "contrary to" or involved an unreasonable application of clearly established case law; see 28 U.S.C. §2254(d)(1); or (2) was "based upon an unreasonable determination of the facts," see 28 U.S.C. §2254(d)(2).  Applying this deferential standard of review, federal courts frequently decline invitations by habeas petitioners to substitute their legal judgments for the considered views of the state trial and appellate courts.  *See Rice v. Collins*,

546 U.S. 333, 338-39 (2006); *see also Warren v. Kyler*, 422 F.3d 132, 139-40 (3d Cir.

2006); *Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir. 2002).

In addition, § 2254(e) provides that the determination of a factual issue by a

state court is presumed to be correct unless the petitioner can show by clear and

convincing evidence that this factual finding was erroneous.  See 28 U.S.C.

§2254(e)(1).  This presumption in favor of the correctness of state court factual

findings has been extended to a host of factual findings made in the course of criminal

proceedings.  *See, e.g., Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (per curiam);

*Demosthenes v. Baal*, 495 U.S. 731, 734-35 (1990).

This principle mandating deference to state court factual determinations

specifically applies to state court findings relating to the competence of criminal

defendants.  Thus, federal courts are not free to substitute their views for the findings

of state judges on issues of competence to stand trial; *Maggio v. Fulford*, 462 U.S.

111, 117 (1983), competence to waive rights; *Demosthenes v. Baal*, 495 U.S. 731,

734-35 (1990), or whether the defendant's mental competence affected his ability to

comply with post-conviction petition filing deadlines.  *Nara v. Frank*, 488 F.3d. 187,

200-01 (3d Cir. 2007)(state court finding that defendant's mental incompetence

interfered with his ability to file timely petition entitled to a presumption of

correctness.)  Rather, these factual findings must be presumed to be correct unless the

petitioner can show by clear and convincing evidence that these factual findings were erroneous.  *See* 28 U.S.C. §2254(e)(1).

### 3.   Ineffective Assistance of Counsel, The Legal Standard

These principles calling for deference to state court findings apply with particular force to claims of ineffective assistance of counsel, like those made here by Bartone.  The petitioner faces an exacting burden when he collaterally challenges a conviction and sentence based upon the alleged ineffectiveness of counsel.  As the Supreme Court has noted:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or... sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or... sentence resulted from a breakdown in the adversary process that renders the results unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Thus, in order to succeed in a claim of ineffective assistance of counsel, the petitioner must show both "cause"; that is, a legally deficient performance by counsel, and "prejudice" resulting from that ineffective performance.  With respect to the first element of this test, in assessing the competence of counsel, "[j]udicial scrutiny of

counsel's performance must be highly deferential, " *Id.* at 689, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*   A petitioner must satisfy both of the *Strickland* prongs in order to maintain a claim of ineffective counsel.  *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001).

Therefore, *Strickland*  requires a petitioner to "establish first that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001).  This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. *Id.*  Additionally, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.*  However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." *Id.*  (quoting *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996)).

But a mere showing of deficiencies by counsel is not sufficient to secure habeas relief.  Under the second *Strickland* prong, a petitioner also "must demonstrate that he was prejudiced by counsel's errors." *Id.*  This prejudice requirement compels the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*  A

"reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

Thus, as set forth in *Strickland*, a petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 689). The petitioner must then prove prejudice arising from counsel's failings. "Furthermore, in considering whether a petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."'" *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006)(quoting *Strickland*, 466 U.S. at 696.). Therefore, the prejudice analysis compelled by *Strickland* specifically calls upon us to critically assess the strength of the government's case since "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.*

11

Although sometimes couched in different language, the standard for evaluating claims of ineffectiveness under Pennsylvania law are substantively consistent with the standard set forth in *Strickland*. *See Commonwealth v. Pierce*, 527 A.2d 973, 976-77 (Pa. 1987); *see also Werts v. Vaugh*, 228 F.3d 178, 203 (3d Cir. 2000) ("[A] state court decision that applied the Pennsylvania [ineffective assistance of counsel] test did not apply a rule of law that contradicted *Strickland* and thus was not 'contrary to' established Supreme Court precedent."). Accordingly, a federal court reviewing a claim of ineffectiveness of counsel brought in a petition under 28 U.S.C. § 2254 may grant federal habeas relief if the petitioner can show that the state court's adjudication of his claim was an "unreasonable application" of *Strickland*. *Billinger v. Cameron*, 2010 U.S. Dist. LEXIS 63759, at *11 (W.D. Pa. May 13, 2010). In order to prevail against this standard, a petitioner must show that the state court's decision "cannot reasonably be justified under existing Supreme Court precedent." *Hackett v. Price*, 381 F.3d 281, 287 (3d Cir. 2004); *see also Waddington v. Sarausad*, __ U.S. __, 129 S. Ct. 823, 831 (2009) (where the state court's application of federal law is challenged, "the state court's decision must be shown to be not only erroneous, but objectively unreasonable.") (internal citations and quotations omitted). This additional hurdle is added to the petitioner's substantive burden under *Strickland*. Thus, as the Supreme Court has observed a "doubly deferential judicial review . . . applies to a *Strickland*

12

claim evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *See also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (noting that the review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas.").

### 4.    Procedural Thresholds for Section 2254 Petitions–Exhaustion of State Remedies

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. *See Whitney v. Horn*, 280 F.3d. 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court

decision without first providing the state courts the opportunity to correct a constitutional violation. *Rose v. Lundy*, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992); *Santana v. Fenton*, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." *Parker v. Kelchner*, 429 F.3d 58, 63 (3d Cir. 2005).

While this exhaustion requirement compels petitioners to have previously given the state courts, a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," *Picard v. Connor*, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal

complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional claims. *Evans*, 959 F.2d at 1230-33. Similarly, a petitioner meets his obligations by fairly presenting a claim to the state courts, even if the state courts decline to specifically address that claim. *See Dye v. Hofbauer*, 546 U.S. 1(2005) (per curiam); *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004).

A necessary corollary of this exhaustion requirement is the procedural default doctrine which applies in habeas corpus cases. Certain habeas claims, while not exhausted in state court, may also be incapable of exhaustion in the state legal system by the time a petitioner files a federal habeas petition because state procedural rules bar further review of the claim. In such instances:

> In order for a claim to be exhausted, it must be "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If a claim has not been fairly presented to the state courts and it is still possible for the claim to be raised in the state courts, the claim is unexhausted. . . .

> If a claim has not been fairly presented to the state courts but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play. A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless

15

the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

*Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d. Cir. 2002)(citations omitted).

"[A] federal court will ordinarily not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus '[o]ut of respect for finality, comity, and the orderly administration of justice.' This is a reflection of the rule that 'federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds.'." *Hubbard v. Pinchak* ,378 F.3d 333, 338 (3d. Cir. 2004)(citations omitted).

## B.   Bartone's Claims Are Unexhausted and Meritless

Judged by these legal benchmarks, Bartone's current federal habeas corpus petition fails for two reasons.  First, to the extent that this petition can be understood, it seems clear that Bartone has not exhausted any of the claims set forth in this petition by properly and fully presenting and litigating these claims in state court.  Thus, neither Bartone's direct appeal nor his post-conviction appeal raised any of the four issues which Bartone now seeks to present in this federal habeas corpus petition.

We cannot explain, or excuse, Bartone's wholesale failure to timely present, preserve and exhaust these issues in state court.  Moreover, Bartone has neglected to provide any explanation for this procedural default since he has failed to file a traverse

16

responding to the respondent's assertion that these claims are completely unexhausted. Therefore, this failure to exhaust these claims–which is uncontested– now acts as a bar to Bartone's belated efforts to present and litigate these matters for the first time in this federal habeas corpus petition.

Beyond the procedural default stemming from Bartone's failure to exhaust these claims, the assertions which he makes also seem to fail on their merits.  For example, Bartone seems to suggest that his sentencing was unlawful, excessive or procedurally irregular in some fashion.  This argument, however, merits only brief consideration. "Absent some constitutional violation, it is clear that, . . . , federal courts cannot review a state's alleged failure to adhere to its own sentencing procedure."  *Spence v. Sobina*, No. 09-3202, 2011 WL 1161799, *3 (E.D. Feb. 24, 2011) (quoting *Milton v. Graterford*, 2010 WL 5060199, *1 (M.D. Pa. Dec. 6, 2010) (citing *Knight v. Beyer*, 1989 WL 68618, *6 (D.N.J. June 22, 1989)).  For this reason, "a federal court will not reevaluate a sentence in a habeas corpus proceeding unless it exceeds the statutory limits."  *Id.* (citing *Jones v. Superintendent of Rahway State Prison*, 725 F.2d 40, 42-43 (3d Cir. 1984)); *see also Coleman v. Folino*, 2010 WL 2683151, *9 (W.D. Pa. June 1, 2010) (finding that "[g]enerally, sentencing is a matter of state criminal procedure and does not fall within the purview of federal habeas corpus" and, therefore, "a federal court will not normally review a state sentencing determination that falls

within the statutory limit"), *adopted by* 2010 WL 2653351 (W.D. Pa. July 2, 2010). Further, when addressing claims of unconstitutionally excessive sentences, courts generally will find that sentencing is "a matter of state criminal procedure, and does not fall within the purview of federal habeas corpus." *Rodriguez v. Nish*, Civ. A. No. 06-2662, 2007 WL 1774659, *3 (E.D. Pa. June 18, 2007) (quoting *Johnson v. Beto*, 383 F.2d 197, 198 (5th Cir. 1967). Accordingly, it follows that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272 (1980). In this case, Bartone does not argue that the trial court violated a specific constitutional right with respect to the sentences imposed upon him, those sentences fall within the range of penalties permitted by statute and we do not find any substantive legal basis that would warrant habeas relief on these sentencing claims. Therefore, these claims fail.

Likewise, Bartone's newly minted claim of ineffective assistance of counsel collapses on four scores. First, it is unexhausted. Second, it is rebutted as a factual matter by the state court factual findings that Bartone's state trial counsel diligently pursued his defense, thoroughly investigating any potential defense raised by the petitioner. Third, this claim fails because Bartone has not shown that his trial counsel's "representation fell below an objective standard of reasonableness."

*Strickland, supra*, 466 U.S. at 688.  Finally, Bartone has not shown that he was prejudiced by counsel's conduct and has not carried his exacting burden of demonstrating that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Quite the contrary, given the compelling quality of the evidence, which included an admission by Bartone to police that he inappropriately touched his children, it is difficult to perceive of any other likely outcome at trial.  Therefore, Bartone's ineffectiveness claim fails in every respect and should be rejected by this Court.

Bartone also complains that he was denied expert testimony, and suggests that he desired to present some sort of expert witness on DNA forensic evidence.  This claim, however, is raised in the abstract, without any reference to the actual evidence at trial, which did not rely upon this type of forensic proof but rather rested on Bartone's admissions, videotaped evidence, and the testimony of victims and eyewitnesses.  The short answer to this argument is that Bartone does not possess some abstract, free-standing constitutional right to indulge in DNA testing, particularly in a case where the defendant's guilt is established by evidence independent of DNA analysis. *See Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 52, 129 S. Ct. 2308, 2310, 174 L. Ed. 2d 38 (2009).  Therefore, absent some further well-pleaded and fully exhausted assertions of error, this vague

claim that the Commonwealth failed to provide DNA forensic testimony, standing alone, does not afford Bartone federal habeas corpus relief.

Finally, Bartone presents a largely inscrutable claim of prosecutorial misconduct, which seems to suggest without any elaboration that the government suppressed favorable witnesses and evidence.  Aside from the rather casual way that he asserts this misconduct, Bartone's argument is striking for another reason:  He never identifies for us in any intelligible way what evidence was suppressed or concealed by the Commonwealth.  We find this argument insufficient to warrant habeas corpus relief.

"In *Brady v. Maryland*, the Supreme Court held that due process forbids a prosecutor from suppressing 'evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'" *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005) (quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  In order to establish a due process violation under *Brady*, "a defendant must show that:  (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment." *Pelullo*, 399 F.3d at 209 (quoting *United States v. Dixon*, 132 F.3d 192, 199 (5th Cir. 1997)); *see also Simmons v. Beard*, 581 F.3d 158, 167 (3d Cir. 2009).  Evidence is "material" where

"there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Simmons*, 581 F.3d at 167. The "touchstone of materiality is . . . not whether the defendant would more likely or not have received a different verdict with the suppressed evidence, but whether in its absence he received a fair trial . . . ." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

Given the conclusory nature of Bartone's claims regarding the allegedly withheld evidence–evidence that he never fully describes and whose relevance is unknown–we are unable to find that the materiality requirement of *Brady* has been satisfied. Therefore, Bartone is unable to obtain habeas relief upon this unexhausted, and wholly unexplained, claim.

### III.   <u>Recommendation</u>

 Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, and the Response in Opposition to this Petition, IT IS RECOMMENDED that the Petition be DENIED and that a certificate of appealability should not issue.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the

clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 29th day of June 2016.


*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge